[Cite as *State v. Morris*, 2023-Ohio-4021.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

CHARLES ROLLIN MORRIS,

    DEFENDANT-APPELLANT.

CASE NO. 6-23-04

O P I N I O N

Appeal from Hardin County Common Pleas Court
Trial Court No. CRI 20222115

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:  November 6, 2023

APPEARANCES:

    *Emily Beckley* for Appellant

    *McKenzie J. Klingler* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Charles R. Morris ("Morris") appeals the judgment of the Hardin County Court of Common Pleas, arguing that his convictions are not supported by sufficient evidence; that his convictions are against the manifest weight of the evidence; that the trial court erred by imposing the costs of court appointed counsel as part of his sentence; that the trial court erred in sentencing him for offenses that should have merged; and that the trial court erred by ordering him to pay a mandatory fine. For the reasons set forth below, the judgment of the trial court is affirmed in part and reversed in part.

*Facts and Procedural History*

{¶2} Morris was staying in a room at the B&J Motel in Kenton, Ohio. Madison Adams ("Adams") testified that she was acquainted with Morris and had purchased drugs from him on several occasions. She further testified that, on at least two occasions, she saw him sell drugs to other people in his room at the B&J Motel. During these transactions, she saw him use a scale in his room to weigh the methamphetamines that he was selling. Adams testified that she was seeking help in the midst of her drug addiction and encountered a woman named Rochelle Miller ("Miller"). Miller allowed Adams to stay with her for a couple days in August of 2022.

{¶3} Shortly after Adams had come to stay with her, Miller testified that she was awakened in the middle of the night to the sound of someone kicking in her

front door. She explained that she lived in an apartment on the second story of a house and that a stairway went from the front door on the ground floor directly up to her living area. After she woke up, she went with her dog to the top of the stairway where she saw Morris standing at the bottom of the stairs. Miller stated that Morris pointed a handgun directly at her and said, "Where's that b***h at?" (Tr. 307). Since Adams had been staying with her, Miller believed that Morris was referring to Adams with this comment. However, Adams was not at Miller's house at that time.

{¶4} Miller testified that her dog raced down the stairway and chased Morris away from her residence. She then examined the entryway to her house, discovering that the front door was cracked and that the door frame was broken. She testified that she initially did not report this incident to law enforcement because she was afraid of Morris. However, Miller eventually decided that reporting Morris was the right thing to do after speaking with Adams. Miller believed that a friend of Adams's named Daisy had told Morris that Adams had been staying at Miller's residence.

{¶5} On August 25, 2022, Officer Melvin Yoder ("Officer Yoder") of the Kenton Police Department met with Miller and Adams. Based upon what Adams told him, Officer Yoder sought a search warrant for Morris's room at the B&J Motel. During the subsequent search, the police located a pill bottle with sixty-one yellow pills and two pink pills. They also found a glass pipe and two digital scales that

were dusted with a powdery residue. Officer Yoder affirmed that he also discovered a "substance" in a "red plastic cup" inside one of the drawers of Morris's nightstand. (Tr. 411-412). While the police discovered a holster and some gun oil, they did not locate any firearms. After Morris was arrested, the police searched his person and located three Xanax bars on him.

{¶6} Based on the imprinted markings on the pills that were discovered in Morris's room, the police determined that the sixty-one yellow pills were cyclobenzaprine hydrochloride and the two pink pills were Alprazolam. The powdery residue from the scales was sent to the Ohio Bureau of Criminal Investigation ("BCI") for testing. BCI determined that this powdery residue was composed of methamphetamines. The substance in the red cup was also tested and found to be 2.55 grams of methamphetamines.

{¶7} On September 14, 2022, Morris was indicted on nine charges, including one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a fifth-degree felony; one count of having weapons while under disability in violation of R.C. 2925.02(A)(3), a third-degree felony; one count of possession of drugs in violation of R.C. 2925.11(A), a fifth-degree felony; one count of selling, purchasing, distributing, or delivering dangerous drugs in violation of R.C. 4729.51(E)(1)(c), a fifth-degree felony; one count of possessing drug abuse instruments in violation of R.C. 2925.12(A), a first-degree misdemeanor; one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a second-degree felony; one count of

aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2), a second-degree felony; one count of aggravated burglary in violation of R.C. 2911.11(A)(2), a first-degree felony; and one count of aggravated menacing in violation of R.C. 2903.21(A), a first-degree misdemeanor.

{¶8} A jury trial was held on December 14 and 15, 2022. The jury returned verdicts of guilty on all nine charges against Morris. The trial court determined that several of these offenses merged at sentencing, leaving Morris with seven convictions. The trial court issued its judgment entry of sentencing on December 29, 2022. Morris filed his notice of appeal on January 10, 2023. On appeal, he raises the following five assignments of error:

### First Assignment of Error

**Appellant's sentence/conviction was not supported by sufficient evidence.**

### Second Assignment of Error

**The trial court erred in taxing court-appointed attorney fees as costs.**

### Third Assignment of Error

**Appellant's conviction was against the manifest weight of the evidence.**

### Fourth Assignment of Error

**The trial court erred in sentencing Appellant to allied offenses of similar import.**

**Fifth Assignment of Error**

**The trial court erred in ordering Appellant to pay the mandatory fine.**

For the sake of analytical clarity, we will consider the third assignment of error immediately after the first assignment of error.

*First Assignment of Error*

{¶9} Morris asserts that his convictions are not supported by sufficient evidence. He also asserts that the trial court imposed a sentence that is contrary to law and that the trial court erred by permitting other acts testimony at trial.

Legal Standard for Sufficiency of the Evidence

{¶10} "A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial." *In re Swift*, 8th Dist. Cuyahoga No. 79610, 2002-Ohio-1276, ¶ 19. This "analysis addresses the question of whether adequate evidence was produced for the case to be considered by the trier of fact and, thus, whether the evidence was 'legally sufficient to support the verdict * * *.'" *State v. Barga*, 3d Dist. Shelby No. 17-17-14, 2018-Ohio-2804, ¶ 8, quoting *State v. Worthington*, 3d Dist. Hardin No. 6-15-04, 2016-Ohio-530, ¶ 12.

{¶11} An appellate court is not to examine whether the evidence presented should be believed but should rather "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of

the defendant's guilt beyond a reasonable doubt." *State v. Johnston*, 3d Dist. Logan No. 8-13-10, 2014-Ohio-353, ¶ 10, quoting *State v. Jenks*, 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991), *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668 (1997). On appeal, the applicable standard

> is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

*State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 27, quoting *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 62 (3d Dist.).

### Legal Analysis for Sufficiency of the Evidence

**{¶12}** Morris asserts several arguments to challenge the sufficiency of the evidence supporting his convictions under this assignment of error. First, he argues that the State did not properly establish what kind of pills were discovered in his possession. "Under Ohio law, the state can establish the identity of a controlled substance through either direct or circumstantial evidence." *State v. Johnson*, 2015-Ohio-3248, 40 N.E.3d 628, ¶ 68 (10th Dist.). "[T]estimony identifying a prescription drug by its distinct markings is sufficient, without chemical testing, to prove the identity of the drug as a controlled substance." *State v. Evans*, 5th Dist. Richland No. 2022 CA 0034, 2023-Ohio-237, ¶ 40. Thus, "[o]nline databases and

literature references can be used to match a tablet's markings with a particular drug." *State v. Vaughn*, 2019-Ohio-1026, 133 N.E.3d 997, ¶ 27 (2d Dist.).

**{¶13}** In this case, law enforcement discovered a pill bottle in Morris's room that contained a number of pills. Two of these pills were a "pinkish" color and had "B705" imprinted on them. (Tr. 399). Sixty-one of these pills were yellow in color and had "020" imprinted on them. (Tr. 406). Officer Yoder testified that he went to an online database to identify these pills based upon their size, shape, and imprinted markings. He stated that he was trained to identify the pills that he encountered in the course of his duties in this manner.

**{¶14}** Officer Yoder testified that the online database indicated that the yellow pills were cyclobenzaprine hydrochloride five milligram pills and that the pink pills were Alprazolam five milligram pills. Tr. 406. *See State v. Volpe*, 10th Dist. Franklin No. 06AP-1153, 2008-Ohio-1678, ¶ 36. He testified that Alprazolam was a Schedule IV controlled substance and that the yellow pills were not a controlled substance but were only available with a prescription. Officer Yoder then explained that BCI is "overcrowded" with "too many cases" and now "only test [for] what they consider higher level" drug offenses. (Tr. 415-416). From this evidence produced at trial, a rational trier of fact could conclude that these pills were cyclobenzaprine hydrochloride and Alprazolam as indicated by the imprinted markings. Thus, his first argument is without merit.

{¶15} Second, Morris argues that his convictions for aggravated burglary and having a weapon under disability are not supported by sufficient evidence because the State never recovered the handgun that was used to commit these two offenses. To establish the crime of aggravated burglary in violation of R.C. 2911.11(A)(2) and the crime of having a weapon under disability in violation R.C. 2923.13(A)(3), the State must prove that the defendant had a firearm or dangerous ordnance. The Revised Code defines a "firearm" as follows:

> (B)(1) 'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.
>
> (2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.

R.C. 2923.11(B). *See State v. Purefoy,* 9th Dist. Summit No. 28597, 2018-Ohio-246, ¶ 28; *State v. Carter*, 9th Dist. Summit No. 30152, 2022-Ohio-3806, ¶ 22.

{¶16} In his brief, Morris correctly notes that law enforcement did not discover a firearm during the search of his room at the B&J Motel. However, "[p]hysical evidence is not required to sustain a conviction." *State v. Binford*, 8th Dist. Cuyahoga No. 105414, 2018-Ohio-90, ¶ 22 (finding that eyewitness testimony was alone sufficient to establish that the defendant had a weapon under disability).

> Circumstantial evidence may be used to 'prove that the firearm existed and that it was operable at the time of the offense.' (Emphasis added.) *State v. Jackson*, 169 Ohio App.3d 440, 2006-Ohio-6059, 863 N.E.2d 223, ¶ 26-27 (6th Dist.). * * *
>
> The State may establish that a firearm was operable 'by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime.' *In re C.M.*, 3d Dist. Allen No. 1-21-31, 2022-Ohio-240, ¶ 40, quoting [*State v.*] *Murphy*[, 49 Ohio St.3d 206, 208, 551 N.E.2d 932 (1990)], at syllabus.

*State v. Elliott*, 2022-Ohio-3778, 199 N.E.3d 944, ¶ 52-53 (3d Dist.). Further, R.C. 2923.11(B)(2) expressly states that, in determining whether the firearm is operable, "the trier of fact may rely on * * * the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2). This "include[s] explicit or implicit threats made by the person in control of the firearm." *State v. Stokes*, 2d Dist. Clark No. 2020-CA-57, 2021-CA-18, 2021-Ohio-3616, ¶ 36. Thus,

> where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable.

*State v. Thompkins*, 78 Ohio St.3d 380, 384, 1997-Ohio-52, 678 N.E.2d 541, 544-545 (1997). We turn to the evidence that was presented in this case.

**{¶17}** As to the charge of aggravated burglary, Miller testified that she woke up to the sound of someone kicking in her front door. She testified that she went towards the top of the stairs leading to the front door and saw Morris at the bottom of the stairs, pointing a gun directly at her. *State v. McDade*, 11th Dist. Lake No. 97-L-059, 1998 WL 682360, *12 (Sept. 25, 1998). She described this gun as being

"silver with a black grip" and said that she "believe[d] it to be a 45." (Tr. 319). Miller stated that in her "opinion it [the gun] was very much real" and that she was scared for her life. (Tr. 307). She stated that her dog then ran down the stairs and chased Morris away. At trial, Miller identified the picture of the gun found on Morris's phone as looking like the gun that he had pointed at her.

{¶18} Beyond Miller's testimony, the State also produced additional evidence to substantiate the charge of having a weapon under disability. At trial, Shantona Smith ("Shantona") stated that she knew Morris because her mother was married to his brother. Shantona testified that she went to Morris's motel room with her husband, Kyle Smith ("Kyle"). At trial, Shantona and Kyle both testified that they saw Morris with a gun in his room at the B&J Motel. Shantona stated that she held the gun and that it felt like a real gun, not like a BB gun or air soft pistol. She also testified that Morris stated that this was his "new toy" and that he had bullets for the gun. (Tr. 227). Kyle stated that he saw Morris with a gun in his room at the B&J Motel. At trial, he identified this gun as a "black, clip fed" pistol that was "a nine millimeter, maybe 40 cal." (Tr. 245).

{¶19} Shantona also testified that Morris got upset with Kyle and threatened Kyle with the gun, saying he would shoot him. *State v. Watkins*, 8th Dist. Cuyahoga No. 84288, 2004-Ohio-6908, ¶ 16; *State v. Cameron*, 12th Dist. Warren No. CA93-03-028, 1993 WL 489733, *2 (Nov. 29, 1993). She stated that this statement made her believe that the gun was operable. Adams also stated that she saw Morris with

-11-

a gun, describing this firearm as a pistol. She testified that Morris showed her the bullets inside the gun and saw him put bullets into the magazine.

{¶20} Further, the police found a picture of a gun on Morris's phone that was taken on April 22, 2022. The geolocation data from this picture indicated that it was taken at the B&J Motel. The police also located gun oil and a black gun holster in Morris's room. From this evidence, a rational trier of fact could conclude that Morris was in possession of an operable firearm at the times relevant for the offenses of aggravated burglary and having a weapon under disability. Thus, his second argument is without merit.

{¶21} Finally, Morris makes a number of other assertions under this assignment of error.[1] However, even if accurate, none of these assertions demonstrate that the State failed to produce evidence to substantiate an essential element of one of the charges against him. Thus, none of these arguments can establish that any of his convictions are not supported by sufficient evidence. In his third assignment of error, Morris does reassert these arguments as manifest weight challenges. For this reason, we will address these assertions alongside his other manifest weight challenges as part of our analysis of his third assignment of error.

---

[1] Morris asserts that (1) the State did not conclusively establish that the scales found in his room were the scales depicted in pictures found on his phone; (2) the police did not find any cash in his room; (3) the State did not present any data from his phone that established he was at Miller's house on the night her door was broken down; (4) a police detective incorrectly interpreted a text message found on Morris's phone; (5) Miller gave an initial date for the offense of aggravated burglary that had to be corrected by the prosecutor; (6) and the State did not introduce any camera footage from the B&J Motel or testimony from the motel owners.

We turn now to address the arguments he raises against his sentence as part of his first assignment of error.

### Legal Standard for Sentencing

{¶22} R.C. 2953.08 governs appeals based on the felony sentencing guidelines. R.C. 2953.08(A) reads, in its relevant part, as follows:

> (2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2). "'[O]therwise contrary to law' means 'in violation of statute or legal regulations at a given time.'" *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 34, quoting Black's Law Dictionary (6th Ed. 1990).

> Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 12 (3d Dist.), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

Legal Analysis for Sentencing

**{¶23}** Morris raises two main arguments to challenge his sentence on appeal. First, he asserts that a robbery case was mentioned at his sentencing hearing when he was never charged with or convicted of robbery. At his sentencing hearing, the prosecutor mentioned "imposing [a] sentence in the robbery case." (Sentencing Tr. 27). However, the prosecutor appears to have misspoken, referring to the aggravated burglary charge as a robbery by mistake. On appeal, Morris has not raised an argument that explains how this one misstatement could render his sentence as being clearly and convincingly contrary to law. Thus, his first argument is without merit.

**{¶24}** Second, Morris asserts that, during his sentencing hearing, the State incorrectly indicated that he had been on post-release control since 2009. In support of this assertion, Morris specifically identifies the following statement of the prosecutor in his brief:

> He was released—according to the records that I was able to obtain— actually released the most recent time from prison was November of 2017, and then he was on PRC I believe for approximately a year before they terminated him early from that, Your Honor.

(Sentencing Tr. 27). The prosecution does not appear to have been saying that Morris had been on post-release control since 2009 in this identified statement. For

this reason, Morris's assertion does not appear to be supported by the evidence in the record. Further, he has not raised any argument that would explain how the identified statement is inaccurate or would render his sentence clearly and convincingly contrary to law. Thus, his second argument is without merit. We turn now to examining his arguments that challenge the alleged admission of other acts evidence at trial.

### Legal Standard for Other Acts Evidence

{¶25} Evid.R. 404(B)(1) prohibits the use of "[e]vidence of any other crime, wrong or act * * * to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, under Evid.R. 404(B)(2), such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The party seeking to introduce this evidence is to:

> (a) provide reasonable notice of any such evidence the proponent intends to introduce at trial so that an opposing party may have a fair opportunity to meet it;
>
> (b) articulate in the notice the permitted purpose for which the proponent intends to offer the evidence, and the reasoning that supports the purpose; and
>
> (c) do so in writing in advance of trial, or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Evid.R. 804(B)(2)(a-c). In determining whether other acts evidence is admissible, the Ohio Supreme Court has set forth a three-step analysis. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 19.

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

*Id*. at ¶ 20. "These first two steps * * * present questions of law and are subject to a de novo standard of review on appeal." *State v. Richey*, 2021-Ohio1461, 170 N.E.3d 933, ¶ 38 (3d Dist.). The "third step 'constitutes a judgment call which we review for abuse of discretion.'" *State v. McDaniel*, 2021-Ohio-724, 168 N.E.3d 910, ¶ 17 (1st Dist.). An abuse of discretion is not merely an error of judgment. *Sullivan*, *supra*, at ¶ 20. Rather, an abuse of discretion "is present where the trial court's decision was arbitrary, unreasonable, or capricious." *State v. Smith*, 3d Dist. Union No. 14-22-16, 2023-Ohio-3015, ¶ 58.

{¶26} However, "Evid.R. 404(B) only applies to limit the admission of so-called 'other acts' evidence that is 'extrinsic' to the crime charged." *State v. Gawron*, 7th Dist. Belmont No. 20 BE 0009, 2021-Ohio-3634, ¶ 43.

> "When other acts are 'inextricably intertwined' with [an] offense, those acts are said to be intrinsic to the alleged crime. In other words,

acts that are 'inextricably intertwined' aid understanding by 'complet[ing] the story of the crime on trial.' *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008). 'Evidence of other crimes is admissible when evidence of the other crime is so blended or connected with the crime on trial as the proof of one crime incidentally involves the other crime, or explains the circumstances, or tends logically to prove any element of the crime charged.' *State v. Long*, 64 Ohio App.3d 615, 617, 582 N.E.2d 626 (9th Dist. 1989).

*State v. Grant*, 2023-Ohio-2720, --- N.E.3d ---, ¶ 65 (3d Dist.), quoting *State v. Stallworth*, 11th Dist. Lake No. 2013-L-122, 2014-Ohio-4297, ¶ 37.

**{¶27}** Further, by being the "first to broach [a] * * * topic," the Defense may "open[] the door" for the State to engage in questioning on matters it may not have otherwise been able to address. *State v. Barnett*, 3rd Dist. Logan No. 8-12-09, 2013-Ohio-2496, ¶ 40. If the Defense introduces other acts testimony on cross-examination, an objection to the State's subsequent questioning on this matter is generally waived even if such evidence would have been otherwise inadmissible. *State v. Waver*, 8th Dist. Cuyahoga No. 73676, 1999 WL 632902, *8 (Aug. 19, 1999); *State v. Davis*, 195 Ohio App.3d 123, 2011-Ohio-2387, 958 N.E.2d 1260, ¶ 26 (8th Dist.). Thus, testimony about prior acts elicited by the State will not be found to constitute prejudicial error where the Defense first "opens the door" to such questioning. *State v. Brooks*, 9th Dist. Medina No. 07 CA 0111-M, 2008-Ohio-3723, ¶ 53.

Legal Analysis for Other Acts Evidence

**{¶28}** Morris argues that the trial court erred by permitting testimony about his prior bad acts at trial. While Morris does not specifically identify the portions of the record that are subject to this argument, he does generally challenge the admission of other acts testimony regarding "aggravated menacing (threatening with a gun), drug trafficking, kidnapping and sexual assault." (Appellant's Brief, 12). He also mentions that these acts were the subject of several objections raised by defense counsel at trial. For this reason, we will examine the three objections at trial that were related to other acts evidence.

**{¶29}** First, defense counsel cited Evid.R. 404(B) as the basis of an objection during the testimony of Dakota Davis ("Davis"). At trial, Davis stated that she was acquainted with Morris through a mutual friend and had reported an incident involving him on August 18, 2022 to the police. During her testimony, the following exchange occurred:

> [Prosecutor]: [W]hat was your conversation with Chuck about that day?
>
> [Davis]: Well, we had spoke about, you know, a different—a bunch of things, but he had told me to get, you know—if I didn't get my mom under control.
>
> [Defense Counsel]: I'm going to object at this point, Your Honor. May we approach?

(Tr. 191-192). Defense counsel then informed the trial court that she believed that the State was trying to elicit testimony about an incident of aggravated menacing

-18-

that occurred on that date. After this discussion at the bench, Davis testified that Morris told her that he had a gun, though she was not sure if Morris had the gun "present with him or * * * just said he had one." (Tr. 204). Davis then stated that she did not believe his statements about the gun.

{¶30} In examining this testimony, we initially note that Morris was charged with having a weapon under disability and that testimony about whether he had a firearm was directly related to this charge. When determining whether the defendant had an operable firearm, "the trier of fact may rely upon circumstantial evidence, including * * * the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B). Such evidence "include[s] explicit or implicit threats made by the person in control of the firearm." *Stokes*, *supra*, at ¶ 36. Thus, the testimony that was admitted at trial was directly related to an offense for which Morris had received a charge.

{¶31} Further, the questions on direct examination do not suggest that the prosecutor was attempting to elicit testimony about a prior act in which Morris had allegedly committed the offense of aggravated menacing. In response to one question, Davis did begin to give a meandering answer that could possibly have ventured into other acts testimony. However, defense counsel raised an objection during this answer and informed the trial court of her concern that Davis was about to speak about an inadmissible prior act. Regardless of whether Davis was about to speak about this prior act, she did not end up giving any testimony at trial that would

-19-

lead a juror to believe that Morris had committed the offense of aggravated menacing. Since Davis did not ultimately give any testimony about Morris's prior acts that were extrinsic to the offenses for which he received charges in this exchange, this first argument is without merit.

**{¶32}** Second, defense counsel cited Evid.R. 404(B) as the basis of an objection when Adams was testifying on direct examination during the following exchange:

[Prosecutor]: Why did you have contact with law enforcement?

[Adams]: I contacted the law enforcement because I was in fear of my life. It's been—

[Prosecutor]: Okay.

[Adams]: I was running around Kenton for a couple days. I escaped out of Room 34 at the—

[Defense Counsel]: I'm going to object, Your Honor.

(Tr. 116). At a sidebar, defense counsel stated that the reason for her objection was that "[t]here are allegations made in regard to a possible kidnapping or even sexual assault" that constituted prior bad acts that were not the basis of any charges in this case. (Tr. 116).

**{¶33}** However, in the absence of the statements made by defense counsel at the sidebar, we would not be able to ascertain from the content of these identified statements that allegations of kidnapping and sexual assault had previously been raised against Morris. Further, the State introduced evidence that Adams spoke with

the police after Morris broke down Miller's door in an apparent effort to locate Adams. For this reason, Adams's mention of "fear" can be understood with reference to the acts for which Morris was charged. (Tr. 116).

{¶34} Similarly, Adams testified about the illegal activities that she observed in Morris's motel room for which he received charges. Her testimony also indicates that she participated in several of these illegal activities. Given this context, this reference to "escaping from Room 34" could easily be interpreted to mean that Adams's was extricating herself from these illegal activities. (Tr. 116). Further, even if Adams was about to describe other prior acts, defense counsel's objection stopped her from venturing into these matters. Since Adams did not ultimately divulge other acts testimony that was specifically related to any alleged kidnapping or sexual assault in this exchange, this second argument is without merit.

{¶35} Third, defense counsel cited Evid.R. 404(B) as the basis for an objection that was raised after Adams gave the following testimony on redirect examination:

> [Prosecutor]: The things that you did at that hotel room, is that things you wanted to do?
>
> [Adams]: No. I didn't want to be there. Did I want to use drugs? Up to a certain point. I only got myself—
>
> [Prosecutor]: Why did you do the things you did in that room?
>
> [Adams]: It was against my own will. So I—when Daisy—when Daisy brought me in there, she told me she was going out to get some papers and some pens to calm him down, and she was smoking and

all I heard was the tires squeal.  And so I looked, like toward the door, and when I turned my head back there was that—that handgun in his hands pointing at me.  He said you can leave if you want to but your family won't have a body to bury.

* * *

[Prosecutor]:  And he was—what was he holding at the time?

[Adams]: He was holding the handgun in the picture.  * * *

[Prosecutor]:  That black gun that you described?

[Adams]:  Yeah, that picture.

[Defense Counsel]:  I'm going to object to this whole line of questions, Your Honor * * *.

(Tr. 175-176).  In response to this objection, the prosecutor argued that the Defense had opened the door to this line of questioning during cross-examination by inquiring into Adams involvement in drug trafficking alongside Morris in the B&J Motel.  On cross-examination, the following exchange occurred:

[Defense Counsel]:  Did you get charged with anything as a result of your time in that hotel room?

[Adams]:  No.

[Defense Counsel]:  You admitted that you weighed some of the drugs and you participated in selling some of those drugs; is that correct?

[Adams]:  Yeah.

[Defense Counsel]:  But you never got charged with anything after you made your statement to the officers?

[Adams]:  No.  I live with this.

-22-

(Tr. 169-170). Based on this previous exchange, the prosecutor argued that the State was entitled to offer an explanation for her involvement in trafficking drugs alongside Morris. The trial court then determined that the Defense had opened the door and overruled the objection. After the trial court ruled on this objection, the prosecutor did not pursue this line of questioning any further.

**{¶36}** In this situation, the Defense specifically inquired into Adams's involvement in trafficking drugs in Morris's hotel room, raising the possibility that her testimony was motivated by a desire to avoid charges for her criminal activities. In so acting, the Defense opened the door to subsequent questioning about Adams's involvement in these activities. The State's limited questioning on this topic during redirect examination provided some context as to why Adams was involved in these activities and why she may not have received charges in this case. Thus, even if this identified exchange contained otherwise inadmissible evidence, "[t]he state did no more than walk through a door opened by the appellant." *Waver*, *supra*, at *8. We cannot conclude that the trial court abused its discretion in permitting this testimony over the Defense's objection. This third argument is without merit.

**{¶37}** In conclusion, we have examined each of the arguments that Morris has raised to challenge the sufficiency of the evidence supporting his convictions. Having considered the evidence in a light most favorable to the prosecution, we conclude that he has failed to establish that the State did not carry its burden of production. Further, the arguments raised herein also fail to establish that the

sentence imposed in this case is clearly and convincingly contrary to law. Finally, Morris has not demonstrated that the trial court erred in permitting testimony that was inadmissible under Evid.R. 404(B). Accordingly, his first assignment of error is overruled.

*Third Assignment of Error*

**{¶38}** Morris raises several arguments that allege his convictions are against the manifest weight of the evidence.

Legal Standard

**{¶39}** The manifest weight of the evidence analysis examines whether the State has carried its burden of persuasion at trial. *State v. Wilson*, 2022-Ohio-504, 185 N.E.3d 176, ¶ 58 (3d Dist.). In this process, "an appellate court's function * * * is to determine whether the greater amount of credible evidence supports the verdict." *State v. Harvey*, 3d Dist. Marion No. 9-19-34, 2020-Ohio-329, ¶ 12, quoting *Plott*, *supra*, at ¶ 73. Accordingly, an "appellate court sits as a 'thirteenth juror' * * *." *Barga*, *supra*, at ¶ 19, quoting *Thompkins*, *supra*, at 388.

> Appellate courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"

*State v. Randle*, 2018-Ohio-207, 104 N.E.3d 202, ¶ 36 (3d Dist.), quoting *Plott*, *supra*, at ¶ 73, quoting *Thompkins, supra,* at 387.

**{¶40}** "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *Sullivan*, *supra*, at ¶ 38, quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

Legal Analysis

**{¶41}** Morris raises several arguments under this assignment of error to challenge his convictions. First, Morris asserts that his convictions are against the manifest weight of the evidence because conflicting evidence was presented at trial. However, "[a] conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." *State v. Jackson*, 12th Dist. Butler No. CA2001-10-239, 2002-Ohio-4705, ¶ 48. Further, "[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." *State v. Hampton*, 3d Dist. Seneca No. 13-18-01, 2018-Ohio-3320, ¶ 27, quoting *State v. Bromagen*, 12th Dist. Clermont No. CA2005-09-087, 2006-Ohio-4429, ¶ 38. Morris cannot demonstrate that his convictions are against the manifest weight

of the evidence simply by pointing to the fact that his trial contained conflicting evidence. Thus, his first argument is without merit.

**{¶42}** Second, Morris asserts that his convictions are against the manifest weight of the evidence because several of the State's witnesses had been, at various times in their lives, addicted to illegal drugs. However, extensive testimony about the past drug usage and criminal histories of these witnesses was elicited at trial by the State and by the Defense. *State v. Gist*, 2d Dist. Montgomery No. 21436, 2007-Ohio-5571, ¶ 5, 7. Thus, the jurors were well-aware that several of the State's witnesses were or had been addicted to illegal drugs.

**{¶43}** Ultimately, the credibility of witnesses remains a matter that is primarily to be decided by the trier of fact. *State v. Risner*, 3d Dist. Hardin Nos. 6-21-12, 6-21-13, 2022-Ohio-3877, ¶ 44. Pointing to the fact that several of the State's witnesses were current or former drug addicts does not establish that any of his convictions were against the manifest weight of the evidence. *State v. McDougald*, 4th Dist. Scioto No. 16CA3736, 2016-Ohio-5080, ¶ 8; *State v. Poindexter*, 10th Dist. Franklin No. 19AP-394, 2021-Ohio-1499, ¶ 32. Nothing in the record suggests that the jurors lost their way and returned a verdict against the manifest weight of the evidence because they relied upon the testimony of these witnesses at trial. Thus, his second argument is without merit.

**{¶44}** Third, Morris argues that any conclusion that the pills found in his possession were Alprazolam and cyclobenzaprine hydrochloride is against the

manifest weight of the evidence. Under the first assignment of error, we concluded that the State presented some circumstantial evidence during Officer Yoder's testimony from which a rational trier of fact could draw a conclusion as to the identity of these pills. *See Vaughn, supra*, at ¶ 30.

{¶45} On cross-examination, defense counsel asked Officer Yoder about whether drugs are ever cut with other substances and then pressed into the shape of a pill. Officer Yoder stated that he has seen fentanyl pressed into the shape of pills, but he also said, "you could clearly—the second I saw them, like, those are not pills." (Tr. 459). He stated that drug dealers "try really hard to make them [pressed pills] look real * * *." (Tr. 460). However, the pressed pills "always have tell-tale signs. If you look at them, you can see they're not the same." (Tr. 460).

{¶46} Officer Yoder further testified that he did not have the ability to conduct a lab analysis to determine the precise chemical makeup of these pills. He also stated that BCI would not test Schedule IV drugs or medications that are not scheduled. He stated that, when he submitted pills to BCI, the lab report would come back, saying "determined by visual inspection." (Tr. 464). For this reason, if the pills are "clearly * * * a professionally made" and not "a poorly made pressed pill," the police will use an online database to determine the identity of the pill. (Tr. 463). Having examined the relevant evidentiary materials, we conclude that Morris has failed to establish that any of his convictions are against the manifest weight of the evidence with this argument. Thus, his third argument is without merit.

-27-

**{¶47}** Fourth, Morris argues that the State's witnesses did not establish that the two scales discovered in his room were the same as the scales that were depicted in the pictures found on his phone.[2] On cross-examination, Officer Yoder was asked whether the scales that were discovered during a search of Morris's room appeared to be the same as the scales that were depicted in two pictures found on Morris's phone. He indicated that the scales in the pictures and the scales discovered in Morris's room were the same make and model. When questioned further, Officer Yoder stated that he did not "have a scientific method" that could conclusively establish that these were the exact same scales. (Tr. 453).

**{¶48}** The State also introduced the geolocation data that was contained on the photos of the scales that were found on Morris's phone. This data indicated that the pictures of the scales on Morris's phone were taken at the B&J Motel. Adams also testified that she saw Morris use the scales depicted in the pictures while she was in his room. From all of this evidence, a jury could infer that the scales found in Morris's possession were the scales depicted in the pictures found on his phone. With this argument, Morris has not demonstrated that any of his convictions are against the manifest weight of the evidence. Thus, his fourth argument is without merit.

---

[2] The fourth through ninth arguments addressed in this assignment of error were originally asserted under Morris's first assignment of error and were reasserted under his third assignment of error. Since these arguments ultimately address the manifest weight of the evidence rather than the sufficiency of the evidence, we are considering these arguments here.

{¶49} Fifth, Morris argues that no cash was found during the search of his room. The discovery of large amounts of cash can, under certain circumstances, provide some evidence to substantiate various drug offenses. *State v. Russell*, 4th Dist. Ross No. 21CA3750, 2022-Ohio-1746, ¶ 85. At trial, Officer Yoder testified that he could not remember if any cash was discovered in Morris's room. He could only report that the police did not discover "large amounts of cash" but may have found "a 20 or 50." (Tr. 467). He also testified that, in the Kenton area, the police generally do not discover large amounts of cash in drug trafficking investigations. Officer Yoder further stated that, at most, the police might discover "a couple thousand" dollars in this area. (Tr. 467).

{¶50} However, Morris was found to be in possession of methamphetamines; a glass pipe; digital scales; and prescription pills. The powdery residue on the scales found in Morris's room was also tested and found to be methamphetamines. Further, Adams testified that Morris had supplied her with all the drugs she used, including methamphetamines and marijuana. Shantona also testified that Morris offered to give her methamphetamines in exchange for a car ride. Shantona, her husband, and Adams also testified that they saw Morris with methamphetamines in his room. Morris has not advanced an argument on appeal that explains how the absence of large amounts of cash in his room establishes that any of his convictions are against the manifest weight of the evidence. Thus, his fifth argument is without merit.

-29-

**{¶51}** Sixth, Morris asserts that the State did not introduce any geolocation data from his phone that could confirm that he was at Miller's house on the night of the break in. As an initial matter, we note that the record does not contain any indication that such evidence even existed. Further, at trial, Miller testified that a light by the front door allowed her to see Morris standing at the bottom of the stairs on the night of the offense. She further testified that she knew Morris and could, therefore, recognize him. Thus, his sixth argument is without merit.

**{¶52}** Seventh, Morris argues that Detective Terry Sneary ("Detective Sneary"), during his trial testimony, imposed a meaning on the text messages obtained from his (Morris's) phone that did not represent the actual content of these text messages. At trial, Officer Sneary read the following text message from Morris's phone: "Already been out there and talked to you. I thought you said that weighed two." (Tr. 282). The following exchange then occurred:

[Prosecutor]: Okay. So presumedly [sic] something weighed two?

[Officer Sneary]: Yeah.

[Prosecutor]: Did that seem—

[Officer Sneary]: I would assume that meant to say weights two grams.

[Prosecutor]: That seems like drug talk to you.

[Officer Sneary]: Yes.

(Tr. 283). On appeal, Morris argues that Detective Sneary improperly inserted the word "grams" into this text message. However, police officers have been permitted by courts to interpret the terminology used in text messages based on their knowledge and experience. *State v. Lavender*, 2019-Ohio-5352, 141 N.E.3d 1000, ¶ 97 (1st Dist.); *State v. Parks*, 3d Dist. Seneca No. 13-19-18, 13-19-19, 2020-Ohio-145, ¶ 14; *State v. Bozarth*, 5th Dist. Licking No. 2019 CA 00040, 2020-Ohio-752, ¶ 12. Morris has not explained how the presence of this evidence at trial renders any of his convictions against the manifest weight of the evidence. Thus, this seventh argument is without merit.

**{¶52}** Eighth, Morris points out that, during Miller's testimony, the date she initially gave during for the break in at her house had to be corrected by the prosecutor. However, "[t]his simple error does not create an inconsistency of such a nature that the judgment can be said to be against the manifest weight of the evidence." *State v. Duong*, 11th Dist. Trumbull No. 98-T-0026, 1998 WL 964315, *3 (Dec. 11, 1998) (addressing a situation in which the prosecution inadvertently stated the wrong date for the offense during questioning). Morris has not explained how a mistake that was corrected at trial rendered any of his convictions against the manifest weight of the evidence. Thus, his eighth argument is without merit.

**{¶53}** Lastly, Morris asserts that the State did not introduce any testimony from the owners of the B&J Motel or any camera footage that may have existed from the B&J Motel. However, the record does not contain any indication that the

owners were aware of any information that was relevant to this case or that any camera footage from the motel even existed. The fact that Morris had a room at the B&J Motel does not appear to have been disputed at trial. Numerous eyewitnesses gave testimony that placed him in Room 34 of the B&J Motel. Morris has not explained how the absence of this evidence renders any of his convictions against the manifest weight of the evidence. Thus, his ninth argument is without merit.

{¶54} In conclusion, the arguments raised by Morris on appeal do not establish that the jury lost its way and returned a verdict that was against the manifest weight of the evidence. Thus, Morris has failed to establish that the evidence in the record weighs heavily against any of his convictions. Accordingly, his third assignment of error is overruled.

*Second Assignment of Error*

{¶55} Morris argues that the trial court improperly assessed court-appointed counsel fees as part of his sentence.

Legal Standard

{¶56} Pursuant to R.C. 2941.51 and R.C. 120.36(C), a "trial court in a criminal case has the authority to impose court-appointed-counsel fees upon a defendant." *State v. Taylor*, 163 Ohio St.3d 508, 2020-Ohio-6786, 171 N.E.3d 290, ¶ 24. However, "because there is no statutory authority allowing a trial court to 'sentence' a defendant to pay court-appointed-counsel fees, such an order cannot be included as a part of the defendant's sentence." *Id.* at ¶ 35. For this reason,

> if the assessment of the fees is included in the sentencing entry, the court must note that the assessment of the court-appointed-counsel fees is a civil assessment and is not part of the defendant's sentence. To avoid confusion, the best practice would be to include the order in a separate entry, apart from the sentence.

*Id*. at ¶ 37.  If a trial court incorrectly imposes court-appointed-counsel fees as part of a sentence, that portion of the sentencing entry must be vacated.  *Id*. at ¶ 38. However, "[t]here is no need to resentence [the defendant] * * * because * * * the fee order was not lawfully a part of [the] * * * sentence." *Id*.

## Legal Analysis

**{¶57}** The judgment entry of sentencing in this case stated that Morris was to "[p]ay court costs, including court appointed counsel fees which are hereby Ordered taxed as costs and paid by Defendant[.]" (Doc. 46). *See State v. Barnett*, 3d Dist. Hardin No. 6-22-16, 2023-Ohio-678, ¶ 23.  On appeal, Morris argues that the trial court erred by imposing these costs as part of his sentence.  In its brief, the State concedes that the trial court erred as alleged and that Morris's argument herein has merit.  Applying the Ohio Supreme Court's holding in *State v. Taylor* to the facts in this case, we conclude that the trial court erred in imposing court-appointed-counsel fees as part of his sentence.  *Taylor, supra*, at ¶ 38-39.  For this reason, the portion of his sentence that imposes court-appointed-counsel fees is vacated.  *Id*. Morris's second assignment of error is sustained.

*Fourth Assignment of Error*

**{¶58}** Morris asserts that the trial court erred by imposing sentences for allied offenses that should have merged.

Legal Standard

**{¶59}** "Both R.C. 2941.25 and the Double Jeopardy Clause prohibit multiple convictions for the same conduct." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 27. R.C. 2941.25 reads:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25. Under Ohio law, if a defendant is charged with allied offenses of similar import the "trial court is required to merge [these offenses] at sentencing." *Underwood* at ¶ 27.

**{¶60}** To determine "whether two offenses are * * * subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 16, quoting *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, syllabus.

> However, multiple convictions are permitted 'if we answer affirmatively to just one of the following three questions: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separate? And (3) Were they committed with a separate animus or motivation?'

*State v. Howton*, 3d Dist. Allen No. 1-16-35, 2017-Ohio-4349, ¶ 14, quoting *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 76.

Legal Analysis

**{¶61}** Morris first asserts that his convictions for the first, fifth, and eighth counts in this case should have merged at sentencing.[3] These convictions were for the charges of aggravated possession of drugs, possession of drug abuse instruments, and aggravated burglary respectively. However, the offense of aggravated burglary occurred on August 23, 2022 when Morris broke down Miller's door. The other two offenses identified in this argument were alleged to have occurred on a completely different date. The offense of aggravated burglary was not committed with the same conduct that gave rise to the first and fifth counts in the indictment. Similarly, the offenses of aggravated possession of drugs and possession of drug abuse instruments requires possession of two different types of

---

[3] In his brief, Morris does not identify which convictions he believes should have merged at sentencing. However, during oral arguments his counsel asserted that "counts one * * * [should] be merged * * * with count five and also * * * eight. And also then count two with the other drug offenses." Oral Arguments, Third District Court of Appeals Audio Recording on July 25, 2023. Since counsel did identify the convictions that are subject to this challenge at oral arguments, we will conduct a merger analysis on these specified convictions in the interests of justice.

items. Thus, these offenses were not allied offenses of similar import that were subject to merger. Thus, his first argument is without merit.

**{¶62}** Second, Morris asserts that his conviction for the second count in this case should have merged with the other drug offenses. The second count in the indictment charged Morris with having weapons while under disability. The conduct that gave rise to the offense of having a weapon under a disability in this case was not committed with the same conduct that gave rise to the drug-related offenses in this case. With this assertion, Morris has not established that the second count should have merged with the other drug offenses in this case. Thus, his second argument is without merit. His fourth assignment of error is overruled.

*Fifth Assignment of Error*

**{¶63}** Morris asserts that the trial court erred by imposing the mandatory fine as part of his sentence in this case.

Legal Standard

**{¶64}** "[R.C.] 2929.18(B)(1) governs the imposition of mandatory fines for certain drug-related offenses." *State v. Holbrook*, 3d Dist. Allen No. 1-21-32, 2021-Ohio-4362, ¶ 11. This provision reads, in relevant part, as follows:

> For a first, second, or third degree felony violation of any provision of Chapter 2925 * * *, the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to [R.C. 2929.18](A)(3) * * *. If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court

determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender.

R.C. 2929.18(B)(1). Thus, "R.C. 2929.18(B)(1) establishes a procedure for avoiding imposition of mandatory fines applicable to certain felony drug offenses." *State v. Hale*, 5th Dist. Perry No. 14-CA-00010, 2014-Ohio-4981, ¶ 12.

**{¶65}** "However, an offender who files an affidavit alleging that he or she is indigent and is unable to pay a mandatory fine is not automatically entitled to a waiver of the mandatory fine." *State v. Delgadillo-Banuelos*, 10th Dist. Franklin No. 18AP-729, 2019-Ohio-4174, ¶ 28. Rather, the trial court must also determine (1) that the defendant is indigent and (2) that the defendant is unable to pay. R.C. 2929.18(B)(1). The burden rests with the defendant "to affirmatively demonstrate that he or she is indigent and is unable to pay the mandatory fine." *State v. Sullens*, 5th Dist. Muskingum No. CT2022-0006, 2022-Ohio-3050, ¶ 27, quoting *State v. Gipson*, 80 Ohio St.3d 626, 635, 1998-Ohio-659, 687 N.E.2d 750 (1998).

**{¶66}** "Indigency concerns a defendant's current financial situation, whereas an inability to pay encompasses his future financial situation as well." *State v. Plemons*, 2d Dist. Montgomery Nos. 26434, 26435, 26436, and 26437, 2015-Ohio-2879, ¶ 7. R.C. 2929.18(B)(1) does not list any "specific factors a court must consider before imposing a fine * * *." *State v. Pate*, 8th Dist. Cuyahoga No. 103077, 2016-Ohio-399, ¶ 8. Further, "[t]he court does not need to expressly state that it considered a defendant's ability to pay, but the record should contain evidence

that the court considered this." *State v. Donaldson*, 2d Dist. Montgomery No. 29473, 2023-Ohio-234, ¶ 51. On appeal, the trial court's determinations on a defendant's indigency and ability to pay will not be reversed in the absence of an abuse of discretion. *State v. Davenport*, 2017-Ohio-688, 85 N.E.3d 443, ¶ 34 (2d Dist.); *State v. Isaac*, 2016-Ohio-7376, 76 N.E.3d 498, ¶ 67 (5th Dist.); *State v. Brown*, 8th Dist. Cuyahoga No. 111462, 2023-Ohio-2174, ¶ 15.

Legal Analysis

**{¶67}** At the sentencing hearing, the trial court found that Morris had the ability to pay the mandatory fine. In its judgment entry of sentencing, the trial court "impose[d] a minimum mandatory fine of $7,500.00 in count six * * *." (Doc. 46). On appeal, Morris asserts that the trial court erred in imposing the mandatory fine, arguing that he does not have the future ability to pay the sum of $7,500.00. In particular, he points to the fact that he will likely be past working age when he completes his prison sentence.

**{¶68}** However, at sentencing, the trial court considered the lifestyle that he was able to maintain for an extended period of time. The State noted that he was able to finance the purchase of a large quantity of drugs in this case but also conceded that Morris would be at an advanced age when he completed his sentence. The trial court also noted that Morris sent a letter from jail that informed a friend where he could "get the money" to pay for the costs of keeping his room, indicating that he has funds available to him somewhere. (Sentencing Tr. 65-66).

{¶69} In this case, the trial court considered various factors relating to Morris's present and future ability to pay. The trial court then found that Morris had the ability to pay the mandatory fine. When applying the abuse of discretion standard on appeal, this Court is not permitted to substitute its own judgment for that of the trial court. Having examined the evidence in the record, we cannot conclude that the trial court abused its discretion in reaching this conclusion. Accordingly, his fifth assignment of error is overruled.

*Conclusion*

{¶70} Having found no error prejudicial to the appellant in the particulars assigned and argued in the first, third, fourth, and fifth assignments of error, the judgment of the Hardin County Court of Common Pleas is affirmed as to the matters raised therein. Having found error prejudicial to the appellant in the particulars assigned and argued in the second assignment of error, the judgment of the Hardin County Court of Common Pleas is reversed as to the matters raised therein. This case is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment Affirmed in Part*
*Reversed in Part*
*And Cause Remanded*

**WALDICK and ZIMMERMAN, J.J., concur.**

**/hls**