[Cite as *State v. McDaniel*, 2021-Ohio-724.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190476 |
|  |  | TRIAL NO. C-19CRB-799 |
| Plaintiff-Appellee, | : |  |
|  | : | *O P I N I O N.* |
| vs. |  |  |
|  | : |  |
| ANTHONY MCDANIEL, | : |  |
| Defendant-Appellant. | : |  |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  March 12, 2021

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Adam Tieger*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond L. Katz,* for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1}  Sometimes, a case helps illustrate the wisdom of a familiar adage, like don't ask a question you don't know the answer to.  This is such a case.  Defense counsel pried from the victim, in cross-examination, damaging (and otherwise inadmissible) testimony about the defendant's prior convictions by asking her to share any concerns she had about the defendant.  With the door thrown open, the trial court admitted certified copies of these prior convictions, which the state portrayed as admissible under Evid.R. 404(B).  As we explain below, we find that the trial court impermissibly admitted this latter evidence, which is hallmark propensity evidence in contravention of Evid.R. 404(B), as the Ohio Supreme Court has recently explained.  However, we ultimately find this error harmless because the jury already had before it evidence of the prior convictions by virtue of the victim's testimony, blunting any prejudice that the defendant could claim.  Therefore, we affirm the conviction.

I.

{¶2}  At the time of these events, defendant-appellant Anthony McDaniel was living with his girlfriend and her roommate in a single family home.  The roommate testified that one morning, while in the bathroom preparing to shower, she noticed a phone in the corner, partially obscured by some towels.  She didn't think much about it and proceeded with her day.  About a week later, however, she again noticed the phone as she prepared to shower, raising her suspicions.  Upon further inspection, the roommate discovered that the phone was video recording.  She then accessed the phone's previous recordings, finding, to her dismay, a 17-

minute video of her from several days earlier in the bathroom, in varying stages of undress. The phone belonged to Mr. McDaniel.

{¶3} Shaken by this discovery, the roommate took the phone to her car to investigate further, calling Mr. McDaniel's girlfriend to confront her about the video. In the meantime, Mr. McDaniel began looking for his phone and, after finding it with the roommate outside, an altercation ensued where he recovered his phone from her. Mr. McDaniel's girlfriend soon returned, attempting to broker a détente about the incident. Mr. McDaniel explained that the recording from several days earlier had been an accident—he intended to record his girlfriend (allegedly with her consent), rather than the roommate. Mr. McDaniel then relinquished his phone for inspection, but the roommate testified that only the earlier 17-minute recording remained on the phone—the video from that day had vanished. The roommate obtained a copy of the video, which was admitted into evidence at trial.

{¶4} The state charged Mr. McDaniel with voyeurism under R.C. 2907.08(B), which provides: "No person, for the purpose of sexually arousing or gratifying the person's self, shall commit trespass or otherwise surreptitiously invade the privacy of another to videotape, film, photograph, or otherwise record the other person in a state of nudity." Because it was undisputed that Mr. McDaniel recorded the roommate, the only issue at trial was whether he intended to record *her*. The resolution of this question boiled down to witness credibility. Evidence in Mr. McDaniel's favor consisted of his own claim of accidental recording, which his girlfriend corroborated by testifying as to her consent to being recorded. Counterbalancing that evidence was the roommate's testimony that Mr. McDaniel had recorded her a second time while his girlfriend was away from the house.

3

{¶5}   Against this backdrop, additional evidence made it into the record at trial that largely forms the basis of this appeal: Mr. McDaniel had two prior convictions for public indecency.   As relevant here, these convictions were introduced in two stages.  First, the roommate testified on cross-examination, upon prompting from defense counsel, that Mr. McDaniel was on probation for exposing himself to different people.  Then the state presented certified copies of the two convictions as other-acts evidence under Evid.R. 404(B).  The stated purpose of admitting these convictions was to show absence of mistake—that Mr. McDaniel had intended to record the roommate.  Ultimately, the jury sided with the state and found Mr. McDaniel guilty of voyeurism.

{¶6}   On appeal, Mr. McDaniel presents two assignments of error.  He first argues that his prior convictions constituted impermissible propensity evidence, and second, he challenges his conviction as against the weight of the evidence.  We address each assignment of error in turn.

II.

{¶7}   As to Mr. McDaniel's first assignment of error regarding his prior convictions, we note that the separate presentations of that evidence affect our analysis.  We thus address each admission separately—the roommate's testimony, then the certified copies of the convictions.

A.

{¶8}   As already noted, evidence of Mr. McDaniel's prior convictions emerged in the midst of defense counsel's cross-examination of the roommate.

DEFENSE COUNSEL: And anything that he did beside what happened that disturbed you in any way as a roommate than what you already talked about?

ROOMMATE: In hindsight, yes.

DEFENSE COUNSEL: Go on.

ROOMMATE: He is on probation from two different counties . . .

{¶9} Defense counsel immediately objected. But the court determined that, because the attorney had "opened the door," the roommate could finish answering the question.

Yes, in hindsight, it's uncomfortable that he was on probation in two different counties for exposing himself on different occasions to different people. At the time, I chose to believe [his girlfriend's] explanations for how it * * * wasn't his fault. He didn't mean anything bad, but it's an uncomfortable situation to be in. I chose to have faith in my friend.

{¶10} Both sides agree that the roommate's testimony was not independently admissible. But despite acknowledging the inartfulness of defense counsel's questioning, Mr. McDaniel nonetheless maintains that the trial court committed reversible error because his attorney objected immediately. However, he fails to explain how the timeliness of the objection affects whether the roommate should have been permitted to answer the question. Thus, we proceed to determine whether defense counsel's question "opened the door" to this testimony about his prior convictions.

5

**{¶11}** "The term 'opening the door' is based upon the doctrine of 'invited error' * * * ." *In re Bailey*, 1st Dist. Hamilton No. C-990528, 2001 WL 477069, *1 (May 2, 2001). This doctrine "prohibits a party who induces error in the trial court from taking advantage of such an error on appeal." *Id.*; *see also Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.*, 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus ("A party will not be permitted to take advantage of an error which he himself invited or induced."). And "the doctrine of invited error prevents [a] defendant from asserting an error arising from the disclosure of a prior conviction as a result of his cross-examination of the witness." *State v. Scott*, 6th Dist. Sandusky No. S-19-030, 2020-Ohio-4854, ¶ 27.

**{¶12}** Here, Mr. McDaniel does not cite any case undermining this textbook application of invited error. Indeed, the case law points in the opposite direction. *See State v. Cephas*, 1st Dist. Hamilton No. C-180105, 2019-Ohio-52, ¶ 24 (holding that invited error allowed the admission of victim's statements (who did not testify) because defense counsel asked the detective about those statements, also permitting the state to further examine the statements on redirect examination); *State v. Pennington*, 1st Dist. Hamilton Nos. C-170199 and C-170200, 2018-Ohio-3640, ¶ 54–55 (holding that invited error allowed the admission of pathologists' statements (who did not testify) because defense counsel asked the testifying expert if she had consulted other pathologists before coming to her conclusion). Here, defense counsel asked the roommate an open-ended question about whether Mr. McDaniel had done anything to disturb her, even encouraging her with "go on." Nor was this an episode of a witness going rogue and injecting nonresponsive details. Defense counsel asked the question; it was hers to answer. Thus, we cannot find that the trial

court abused its discretion in refusing to strike the roommate's testimony or by allowing her to finish responding.

### B.

{¶13} But just because a door creaks open, it does not allow a parade to march through. "It has been observed that 'opening the door is one thing. But what comes through the door is another. Everything cannot come through the door.' " *State v. Bronner*, 9th Dist. Summit No. 20753, 2002-Ohio-4248, ¶ 72, quoting *United States v. Winston*, 447 F.2d 1236, 1240 (D.C.Cir.1971). " '[T]he doctrine is to *prevent* prejudice and is not to be subverted into a rule for *injection* of prejudice.' " (Emphasis sic.) *Id.* at ¶ 73, quoting *Winston* at 1240. And this brings us to the state's effort to admit the prior convictions.

{¶14} Soon after the roommate testified, the state renewed a motion it previously made to admit certified copies of Mr. McDaniel's prior convictions. And the trial court ruled that the convictions would go to the jury, reasoning that "under the [roommate's] testimony, * * * the 404(B) evidence, absence of mistake * * * has been met * * * ." Mr. McDaniel frames this issue on appeal as a violation of Evid.R. 404(B). We agree.

{¶15} As we recently explained: "Evid.R. 404(B) exists to guard against the 'propensity' inference—in other words, wielding past bad acts to prove action in conformity therewith, which facilitates a conviction based on prior conduct rather than the evidence at hand." *State v. O'Connell*, 2020-Ohio-1369, 153 N.E.3d 771, ¶ 1 (1st Dist.). However, Rule 404(B) does permit the admission of other acts for limited purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).

7

**{¶16}** Although it may seem easy enough in theory to distinguish between using other-acts evidence to show propensity and using the same evidence for a legitimate purpose, it's much more difficult to apply the distinction in practice. The Ohio Supreme Court recently acknowledged the point: "Courts have long struggled with differentiating between the two types of evidence." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E. 3d 651, ¶ 23. And in an effort to "clear up some of the confusion," the *Hartman* Court set forth "a road map for analyzing the admission of other-acts evidence." *Id.* at ¶ 19.

**{¶17}** In reviewing Rule 404(B) other-acts evidence, we follow a three-step framework: (1) the evidence must be relevant to the particular purpose for which it is offered, Evid.R. 401; (2) the other acts must be offered for a legitimate purpose and not to show propensity to criminal conduct, Evid.R. 404(B); and (3) the danger of unfair prejudice must not substantially outweigh the probative value of that evidence, Evid.R. 403. *See State v. Graham*, Slip Opinion No. 2020-Ohio-6700, ¶ 72, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20. We review these three prongs under a mixed standard of review: the first two pose legal questions that we review de novo, and the third constitutes a judgment call which we review for abuse of discretion. *Hartman* at ¶ 22 ("The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law."), citing Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, Section 4.10 (2d Ed.2019); *Hartman* at ¶ 22 (noting that although the trial court is precluded from allowing improper evidence, it nonetheless has discretion whether to admit permissible evidence), citing *Williams* at ¶ 17.

8

{**¶18**} Here, the state stumbles at the outset of our analysis—whether the prior convictions are relevant. To be sure, the relevance inquiry often proves vexing because "[i]t is almost always true that propensity evidence will have some relevance." *Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E. 3d 651, at ¶ 25; *see* Evid.R. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). "Indeed, [propensity] evidence is excluded 'not because it has no appreciable probative value but because it has too much.' " *Hartman* at ¶ 25., quoting 1A Wigmore, *Evidence*, Section 58.2, at 1212 (Tillers Rev.1983). For this reason, the relevance inquiry does not ask whether the other acts ultimately render the defendant's guilt more or less likely. *Id.* at ¶ 26. Instead, the inquiry considers "whether the evidence is relevant to *the particular purpose* for which it is offered." (Emphasis sic.) *Id.* As we have noted, the state admitted Mr. McDaniel's public indecency convictions for the particular purpose of showing that he intended to record the roommate. Thus, for Mr. McDaniel's convictions to be relevant, they must "tend[] 'to show, by similar acts or incidents, that the act in question was not performed inadvertently, accidentally, involuntarily, or without guilty knowledge.' " *Id.* at ¶ 52, quoting McCormick, *Evidence*, Section 190, at 804 (4th Ed.1994).

{**¶19**} Elucidating how other acts may be relevant to intent, the Court in *Hartman* offered a helpful illustration:

> Say, for instance, the fourth wife died from a gunshot wound at the hand of her husband during a hunting trip, and he defends against the murder charge by claiming that the shooting was accidental. Evidence

9

that he shot his other wives under similar circumstances might be probative of his intent to kill. The inference is that because it is so unlikely that the defendant accidentally shot four women under similar circumstances, it is highly likely that he acted with the intent to kill.

*Id.* at ¶ 53.

{¶20} But as the *Hartman* Court acknowledged, the difference between using other acts to show intent versus propensity is often "thin." *Id.* at ¶ 57. "Evidence that a husband shot three previous wives in 'hunting accidents' does allow a jury to (permissibly) reason that it is unlikely that the fourth shooting was committed accidentally, but it also enables a jury to (impermissibly) reason that he likely killed his fourth wife because he is a killer." *Id.* Thus, using "other-acts evidence to prove the defendant's state of mind 'flirts dangerously with eviscerating the character evidence prohibition' altogether." *Id.*, quoting Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, Section 7.4 (2d Ed.2019).

{¶21} Cognizant of these pitfalls, the Court clarified the permissible inference: " ' "the oftener a *like act* has been done, the less probable it is that it could have been done innocently." ' " (Emphasis added.) *Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E. 3d 651, at ¶ 56, quoting *State v. Evers*, 139 Wis.2d 424, 437, 407 N.W.2d 256 (1987), quoting 2 Weinstein & Berger, *Weinstein's Evidence*, Section 404[12], at 404-84 to 404-87 (1985). The difference, then, between permissible and impermissible evidence turns on whether it is more probative of the defendant's *intent* to commit the charged act or of the defendant's inclination to commit similar crimes. *Id.* at ¶ 58. And the answer flows from this underlying

question: "whether, '*under the circumstances, the detailed facts* of the charged and uncharged offenses strongly suggest that an innocent explanation is implausible.' " (Emphasis sic.) *Id.*, quoting Leonard at Section 7.5.2. In other words, the other acts " 'must be so related to the crime charged *in time or circumstances* that evidence of the other acts is significantly useful in showing the defendant's intent in connection with the crime charged.' " (Emphasis added.) *Id.*, quoting 1 *Wharton's Criminal Evidence*, Section 4:31 (15th Ed.2019).

{¶22} Distilling these principles to this case, we must decide whether Mr. McDaniel's prior convictions are probative of his intent when recording the roommate or of his predisposition to commit sexual offenses. And to answer that question, we ask whether the detailed facts of this voyeurism charge and his prior convictions strongly suggest that he intended to record the roommate. They do not. The circumstances of the prior convictions for self-exposure are not related in time or circumstance to this voyeurism charge. In fact, the only connection between the two is that both are sexual in nature, establishing nothing more than a (impermissible) propensity inference. *See Hartman* at ¶ 62 (holding that evidence defendant previously molested his stepdaughter did not support the inference that he entered adult victim's hotel room intending to rape her because the two acts had no similarity "other than being sexual in nature."). If Mr. McDaniel's prior convictions were also for voyeurism, and he invoked mistake as a defense, those convictions might well be appropriate for rebutting that defense. But the prior convictions were for self-exposure, not voyeurism. And nothing about the prior convictions sheds any light on whether he intended to record the roommate. We thus conclude that Mr. McDaniel's prior convictions were not relevant for the

purpose of showing absence of mistake. And of course, our conclusion that the trial court should not have admitted this evidence obviates our need to proceed with the balance of the inquiry. *See Graham*, Slip Opinion No. 2020-Ohio-6700, at ¶ 72 ("The court is precluded from admitting improper character evidence under Evid.R. 404(B), but it has discretion to allow other-acts evidence that is admissible for a permissible purpose.").

{¶23} However, even though we find error, we must measure that against the harmless error standard:

> (1) "There must be prejudice to the defendant as a result of the admission of the improper evidence at trial"; (2) "an appellate court must declare a belief that the error was not harmless beyond a reasonable doubt," i.e., that there was "no reasonable possibility that the testimony contributed to the accused's conviction"; and (3) "in determining whether the error is harmless beyond a reasonable doubt, the court must excise the improper evidence from the record and then look to the remaining evidence."

*State v. Benson*, 1st Dist. Hamilton No. C-180128, 2019-Ohio-3255, ¶ 23, quoting *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153 ¶ 24, 27–29; *O'Connell*, 2020-Ohio-1369, 153 N.E.3d 771, at ¶ 31 (applying harmless error analysis after finding Evid.R. 404(B) error).

{¶24} We acknowledge that propensity evidence is inherently prejudicial. And in a case that turns on credibility, such as this one, evidence that impermissibly suggests that the defendant is sexually deviant can easily tip the scale in the state's favor. Nonetheless, we do not believe that the copies of Mr. McDaniel's prior

12

convictions contributed to his guilty verdict because the jury permissibly knew of the convictions from the roommate's testimony. Even excising the impermissible copies of his convictions, Mr. McDaniel's prior behavior still remained in play. It is not as if the state brought in new witnesses to dwell on the details of his prior convictions—it just sought admission of the certified copies of the convictions, and these were not read to the jury. Taking into account the context of this case, we simply fail to see how the challenged evidence added much to the mix. Thus, we are confident that the trial court's error was harmless, and we overrule this assignment of error.

III.

{¶25} In his second assignment of error, Mr. McDaniel characterizes his conviction as against the manifest weight of the evidence. As we have explained, this case was mainly a credibility determination, and we chronicled the relevant evidence above. " 'When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.' " *State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29, quoting *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. We see nothing in the record to draw into question the integrity of the trial or to convince us that a manifest injustice occurred, and we therefore overrule Mr. McDaniel's second assignment of error.

\* \* \*

{¶26} In light of the foregoing analysis, we overrule Mr. McDaniel's two assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

13

**WINKLER, J.,** concurs.

**CROUSE, J.,** concurs in part and dissents in part.

**CROUSE, J.,** concurring in part and dissenting in part.

{¶27} I concur with the majority that the trial court did not err in allowing the roommate to finish answering counsel's question during cross-examination or refusing to strike her testimony. I also concur that the trial court erred in admitting the certified copies of Mr. McDaniel's prior public-indecency convictions. However, when it comes to the majority's harmless-error analysis, I must respectfully dissent.

{¶28} I do not agree that because the jury already heard a little about the prior convictions from the roommate, the admission of the certified copies of Mr. McDaniel's convictions was harmless error.

{¶29} There is no dispute that a video recording of the roommate was taken. What is in dispute is whether the defendant was trying to video record the roommate or his girlfriend. He testified that he was trying to record the girlfriend. The girlfriend corroborated his testimony, stating that they had a discussion to do so on that day. As the majority noted, the case turned on credibility–would the jury believe Mr. McDaniel's explanation that he did not intend to record the roommate, but rather intended to record his girlfriend?

{¶30} The adage "don't ask a question you don't know the answer to" is "cross-examination 101." When a lawyer occasionally violates that golden rule and receives an answer that he did not intend, we fortunately have gatekeeper judges whose job it is to ensure the defendant receives a fair trial despite the lawyer's mistake.

{¶31} After defense counsel realized what he had done by asking the dangerous question that prompted such a disastrous response from the roommate, he attempted to fix the damage he caused by objecting and moving to strike her answer. While it was not error for the trial court to allow the roommate to finish her answer, the court should not have compounded defense counsel's error by admitting the certified copies of Mr. McDaniel's convictions, which the majority agrees was clearly improper propensity evidence.

{¶32} In finding harmless error, the majority states, "we simply fail to see how the challenged evidence added much to the mix." On the contrary, I find that the challenged evidence did add much to the mix. Once the court decided to allow the additional evidence of the convictions, these convictions became a major topic of discussion by both the defense and the prosecution.

{¶33} The only thing the jury learned from the roommate about the prior convictions was that Mr. McDaniel "was on probation in two different counties for exposing himself on different occasions to different people," and that the roommate believed his girlfriend's explanations for it—that it "wasn't his fault" and "[h]e didn't mean anything bad."

{¶34} That should have been the end of it. The trial court should have prohibited further questioning by either of the parties and any argument about these convictions in closing. But instead, the court decided that defense counsel had laid a foundation for the prosecution to bring in certified copies of these prior convictions as exhibits to show absence of mistake under Evid.R. 404(B).

{¶35} The certified copies of the convictions carried much more weight than a vague comment by the roommate during cross-examination. Those exhibits

actually contained the details of the offenses and the affidavits of the victims in those cases. One of the affidavits stated:

> He then gave me a weird look with just no expression. He just stared me in the eye and I was looking away as I glanced down out of his plaid green and black pajama pants his hard looking penis was completely up * * * .

{¶36} Another victim account stated:

> McDaniel held his phone at waist level, when [she] looked, she saw McDaniel's penis sticking out of the top of his shorts. McDaniel was wearing elastic waistband shorts, and had them pulled partially down. [She] turned away and McDaniel moved in front of her, and still had the tip of his penis exposed.

{¶37} Allowing evidence of these prior convictions put Mr. McDaniel in a situation where he had to testify about them on direct examination in an effort to explain them away as mistakes. The prosecutor was also permitted to cross-examine Mr. McDaniel about these prior misdemeanor convictions, convictions that the Rules of Evidence would have otherwise prohibited the prosecutor from referencing during cross examination. *See* Evid.R. 609(A)(2) and (A)(3). " 'Evid.R. 609 prohibits the use of a prior misdemeanor conviction to attack a witness' credibility unless the crime involved dishonesty or a false statement.' " *State v. Evans*, 1st Dist. Hamilton No. C-170034, 2018-Ohio-2534, ¶ 26, quoting *State v. Lewis*, 10th Dist. Franklin No. 93AP-911, 1994 WL 171181, *8 (Apr. 28, 1994).

{¶38} Defense counsel addressed the convictions during his closing argument, asking the jury to be fair and to not judge Mr. McDaniel based on his past

mistakes. The prosecutor then emphasized the convictions during his rebuttal, questioning Mr. McDaniel's characterization of the prior convictions and then stating to the jury: "Ask yourself if you buy it. If after all this, every single mistake, a reasonable person keeps making that mistake, or alternatively, the evidence shows if he did it on purpose."

{¶39} And finally, the prior convictions were further highlighted during the jury instructions, when the court told the jury:

Other acts. Evidence was received in this matter about the commission of other acts or crimes other than the offense with which the Defendant was charged in this trial. The evidence was received for a limited purpose. It was not received, nor may you consider it to prove, the character of the Defendant in order to show that he acted in conformity or accordance with that character.

If you find that the evidence of the other crimes, wrongs, or acts as true that the Defendant committed them, you may consider that evidence only for the purpose of deciding whether it proves an absence of mistake or absence of accident. The Defendant's motive, opportunity, intent, or purpose, the Defendant's preparation or plan to commit the offense charged in this trial, or knowledge of circumstances surrounding the offense charged in this trial, related to the identity of the person who committed this offense. That evidence may not be considered for any other purpose.

{¶40} Thus, the court told the jury that it could consider Mr. McDaniel's prior convictions to decide the central issue in the case–his intent, i.e., whether he video recorded the roommate on purpose.

{¶41} As the Ohio Supreme Court explained in *Hartman*: "To tell a jury that a certain piece of evidence may be considered as evidence of 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident' imparts nothing meaningful and is akin to telling the jurors that the evidence may be considered for any purpose." *Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, at ¶ 69, quoting Evid.R. 404(B).

{¶42} I agree with the majority that this case turned on credibility. The jury had to decide who to believe—Mr. McDaniel or the roommate. Evidence that Mr. McDaniel had two prior public-indecency convictions was extremely prejudicial in this case. Based on how these convictions were emphasized throughout the trial, I cannot say that there was no reasonable possibility that the evidence contributed to Mr. McDaniel's conviction and that the error was harmless beyond a reasonable doubt.

{¶43} For these reasons, I would reverse Mr. McDaniel's conviction and remand for a new trial.

Please note:

The court has recorded its entry on the date of the release of this opinion