[Cite as *In re K.M.*, 2024-Ohio-2278.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: K.M. | : | APPEAL NOS. C-230541 |
| | | C-230542 |
| | : | TRIAL NOS. 22-1666X |
| | | 22-1667X |
| | : | |
| | : | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: June 14, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Jessica Moss*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} After a mistrial and a quick restart, the juvenile court in the trial of defendant-appellant K.M. (on multiple counts of gross sexual imposition ("GSI")) faced difficult, day-of-trial decisions regarding whether to admit damaging evidence of prior bad acts and hearsay statements from the victims amidst a complex evidentiary environment. Although we ultimately conclude the juvenile court erred in admitting certain evidence of K.M.'s prior bad acts, we nonetheless determine that its error was harmless and that the juvenile court committed no other errors raised by K.M. We therefore affirm K.M.'s two adjudications of gross sexual imposition under R.C. 2907.05, overruling his three assignments of error.

I.

{¶2} The state charged K.M., who was born in 2006, with three counts of what would be GSI under R.C. 2907.05(A)(4) if he had been charged as an adult, for alleged sexual contacts with two minor children. The first, L.M., was born in 2013 and describes K.M. as her cousin, and the second, M.G., was also born in 2013 and describes K.M. as related to a family friend. The two separate incidents relating to over-the-clothes touching of L.M. and M.G. that resulted in K.M.'s adjudications took place in late 2021, and the juvenile court dismissed a third allegation regarding an earlier touching of M.G.

{¶3} The cause was initially tried before a magistrate in April 2023, resulting in a mistrial after a witness for the prosecution spoke about a victim's testimony with the magistrate outside of official court proceedings. Prior to that initial trial, the state filed a notice of intent to introduce other acts evidence pursuant to Evid.R. 404(B) and

2

R.C. 2945.59 regarding an alleged prior sexual assault of M.G. by K.M., which the state claimed would establish K.M.'s modus operandi.

{¶4} However, at the outset of K.M.'s new trial in June 2023, the state moved to withdraw the notice of intent, and the juvenile court granted the motion. But the state's plans changed again during the trial testimony of a social worker, Stephanie Helton, who had interviewed M.G. at the Mayerson Center for Safe and Healthy Children ("Mayerson Center") in 2022. On cross-examination, K.M. asked Ms. Helton whether M.G. had spoken to the police prior to the interview. Ostensibly, the point defense counsel sought to establish was that it was not best practice to interview an alleged child victim *after* the child already discussed the relevant incident with the police. She confirmed that M.G. disclosed speaking with Detective Andrew Stoll prior to the interview, but she did not discuss (nor did K.M. ask about) what M.G. told the detective or what she and M.G. talked about at the time M.G. told her about the interaction with the police.

{¶5} On redirect, the juvenile court allowed the state to ask Ms. Helton about what she and M.G. discussed when M.G. mentioned speaking to the police, concluding that K.M. had opened the door to her testimony on that matter. Ms. Helton then explained that, around the time M.G. disclosed his police contact, she and M.G. had been discussing an incident from "when he was younger" where K.M. pulled down M.G.'s pants, touched his butt, and anally and orally penetrated him. K.M. objected to the statements on grounds of relevance, unfair prejudice, and improper other acts evidence under Evid.R. 404(B), and the court overruled his objections based on the door opening.

3

{¶6} Also during trial, M.G. testified about a December 2021 incident in which K.M. "smacked" his butt in the kitchen at a relative's home. Although he identified his "private part and [] butt" as places where no one should touch him and said "yes" and identified K.M. when the state asked whether anyone had ever touched him there, M.G. otherwise did not testify about any specific time that K.M. inappropriately touched him, including during the December 2021 incident.

{¶7} During Ms. Helton's testimony, the state played a video recording of her interview with M.G., including portions where he described K.M. grabbing him on his butt and on the "bottom" of his private part over his clothes. The court admitted the approximately 30-minute video into evidence with M.G.'s statements about the prior assault allegation redacted, overruling K.M.'s hearsay objection and holding the balance of the statement admissible under the hearsay exception for statements made for the purposes of medical diagnosis or treatment, Evid.R. 803(4).

{¶8} Later, the state recalled M.G. to the stand, at which point he testified about observing K.M. and L.M. under the covers on top of K.M.'s bed. L.M. then briefly testified that K.M. touched her private part over her clothes once as they sat on his bed in the basement of his house. She added that she felt weird afterwards and shared the episode with M.G. As with M.G., the state called a social worker, Ashley Cremeans, to testify, as she had interviewed L.M. at the Mayerson Center in 2022. Again, the state played portions of her interview with L.M. and moved the recording into evidence over K.M.'s hearsay objection. In the video, L.M. did not recall anyone touching her inappropriately until Ms. Cremeans mentioned that her mother raised that concern. L.M. then recalled, otherwise unprompted and without Ms. Cremeans mentioning K.M.'s name, that K.M. touched her private part while they were on top of

4

his bed and that she told M.G. afterwards, substantially aligning with what she later said at trial.

{¶9}   Detective Stoll testified that he started this investigation after M.G.'s mother reported that he told a school therapist that K.M. had touched his private part and that M.G. was scared because K.M. "had previously assaulted him sexually a couple of times in the past." The court cut off Det. Stoll's answer at that point and indicated that his statement was not taken for the truth of the matter asserted. On cross-examination, defense counsel questioned if he remembered asking K.M. about doing the alleged sex acts because he was "in puberty and you're a little horny or is it because you watched videos?" Counsel then asked the question again, without mentioning "videos." Det. Stoll responded, "I did ask him that," and the defense queried, "So that's your belief?" At that point, Det. Stoll explained that in his experience, kids are routinely exposed to pornography at a young age and then sometimes act out the sex acts that they witness. K.M. objected to hearsay, and the court overruled the objection because the defense first asked about "videos," opening the door to more testimony about them. The court denied the state's attempt to admit additional, related evidence under Evid.R. 404(B), but it did allow some additional testimony on K.M.'s alleged viewing of pornography over his objections.

{¶10}   After trial, the juvenile court adjudicated K.M. as delinquent on two GSI charges—one relating to M.G. and the other relating to L.M. In its oral findings of fact, the court found the victims' testimony credible because they used their own words and relayed the incidents to each other. It also found that, in their forensic interviews, "they remained as sophisticated as kids can be and as credible as they could the entire time." It chalked up "any sort of inconsistencies" to the victims' "age, being a kid and

5

not understanding the gravity of what happened to them and what they were explaining." At the dispositional hearing, the court ordered K.M. to stay away from the victims, placed him on probation, imposed a suspended commitment to the Department of Youth Services, and ordered him to complete a residential program at a youth facility as a condition of probation. K.M. now appeals, asking us to reverse the adjudications and remand the cause for a new trial, presenting three assignments of error.

## II.

{¶11} In his second assignment of error, which we address first, K.M. ascribes error to the court's admission of M.G.'s and L.M.'s statements from their Mayerson Center forensic interviews with Ms. Helton and Ms. Cremeans, respectively, in addition to video recordings of those interviews. The court determined the statements constituted hearsay but found them admissible under the exception for statements made for medical diagnosis or treatment. Evid.R. 803(4). Although the standard of review for hearsay determinations differs between Ohio appellate districts, this district has held that the abuse of discretion standard applies, and we review the admission of hearsay evidence based on the Evid.R. 803(4) exception under that same standard. *HSBC Bank USA, Natl. Assn. v. Gill*, 2019-Ohio-2814, 139 N.E.3d 1277, ¶ 1-5 (1st Dist.) (collecting cases and determining that the abuse of discretion standard applies); *see State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 7-8 (1st Dist.) (applying the abuse of discretion standard in the context of Evid.R. 803(4)).

{¶12} This court has previously established that "[t]he trial court's determination of whether the child's statements were for the purpose of medical diagnosis or treatment depends upon the facts of the particular case" with relevant

6

considerations including: "(1) whether the child was questioned in a leading or suggestive manner; (2) whether a motive to fabricate existed, such as a custody battle; (3) whether the child understood the need to tell medical personnel the truth; (4) the child's age; and (5) the consistency of the child's declarations." *Lukacs* at ¶ 7, citing *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 49 (applying those factors to conclude a similar disclosure by a child victim to a therapist was admissible under Evid.R. 803(4)). In *Lukacs*, the jury viewed a video recording of an interview with a child victim of sexual assault. *Lukacs* at ¶ 4. Applying the standard noted above, we held that the recording was admissible because it "was part of an ongoing attempt to determine the extent of the sexual abuse and the appropriate treatment for the victim," and because the interviewer did not use leading questions, no motive to fabricate existed, and the statements were consistent with the physical evidence. *Id.* at ¶ 8.

{¶13} Similarly, in a subsequent case applying the *Lukacs* factors, we held that a child's allegations of sexual abuse made during a Mayerson interview were admissible as a hearsay exception, despite being initially inconsistent, because the purpose of the interview was to assess safety "both in a physical and psychological sense," the social worker's questions were open-ended and not leading, and the witness knew the difference between the truth and a lie and had no motive to lie. *State v. Bowers*, 1st Dist. Hamilton No. C-150024, 2016-Ohio-904, ¶ 23; *see State v. Ridder*, 1st Dist. Hamilton No. C-150460, 2016-Ohio-5195, ¶ 9 (holding the same on similar grounds). These cases help guide our present inquiry.

{¶14} Here, M.G.'s interview took place at a hospital (the Mayerson Center), and Ms. Helton testified that "before the interview began, I let him know that we did

7

have a medical doctor there, and that if he had worries or concerns about his body," he should express those concerns, and she could share those with the doctor. Although the state acknowledges the objective of interviews at the Mayerson Center is neither exclusively medical nor forensic, this context appears similar to what we considered sufficiently medical in *Lukacs*, *Bowers*, and *Ridder*. Further, Ms. Helton's questioning was gentle, often open-ended, and not phrased to suggest answers to M.G. K.M. did not contend that M.G. had a motive to lie, and we see none in the record. Ms. Helton established the need for M.G. to tell the truth at the beginning of the interview and confirmed through several questions that he understood the nature of telling the truth and lying. Finally, despite K.M.'s assertions to the contrary, M.G.'s statements were substantially consistent. He mentioned being smacked on the butt and touched inappropriately, and later explained in more detail when, how, and where it happened. Therefore, the court did not abuse its discretion in admitting M.G.'s statements and the recording of his interview with Ms. Helton as a hearsay exception under Evid.R. 803(4).

{¶15} The same holds true for L.M.'s statements and interview. Ms. Cremeans told L.M. at the start of the interview that "it was to talk with her about keeping her body safe and healthy." She explained the importance of telling the truth, and L.M. agreed to tell the truth. Ms. Cremeans gently asked mostly open-ended questions and did not lead L.M. or suggest answers. Although L.M. did not mention the incident with K.M. until more than 30 minutes into the interview, despite Ms. Cremeans asking earlier if she had ever been touched inappropriately, she independently recalled specific details of the incident after Ms. Cremeans mentioned that L.M.'s mom raised concerns about inappropriate touching. L.M. recalled that her cousin, K.M., "grabbed"

8

her and touched her "no-no spot" on top of her clothes and identified her private part without being led by Ms. Cremeans. The court thus did not abuse its discretion in admitting L.M.'s statements and the recording of the interview as a hearsay exception under Evid.R. 803(4).

{¶16} Therefore, because the recordings of M.G.'s and L.M.'s Mayerson Center interviews were both admissible under the hearsay exception for statements made for medical treatment, Evid.R. 803(4), we overrule K.M.'s second assignment of error.

III.

{¶17} Next, we address K.M.'s first assignment of error, in which he contends that the juvenile court erred by admitting two types of other acts evidence based on his opening the door: (1) evidence that he watched pornography, and (2) evidence regarding an alleged sexual interaction between him and M.G. that took place years before the charged acts. He argues that even if the door was opened, the juvenile court should not have admitted the evidence because it was propensity-based and was substantially more prejudicial than probative and thus should have been excluded under Evid.R. 404(B).

{¶18} Evid.R. 404(B) "generally bars evidence of other crimes, wrongs, or acts as pure propensity evidence—that is, when utilized to establish a person's character trait and their conformity in the present case with that trait." *State v. Sowders*, 1st Dist. Hamilton No. C-230153, 2023-Ohio-4498, ¶ 10, citing Evid.R. 404(B)(1), and *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975); *see* R.C. 2945.59. In assessing the admissibility of evidence under Evid.R. 404(B), the court first "evaluate[s] whether the evidence is relevant to the particular purpose for which it is offered," which we review de novo. *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-

9

4440, 161 N.E.3d 651, ¶ 22, 26; *see State v. McDaniel*, 2021-Ohio-724, 168 N.E.3d 910, ¶ 17 (1st Dist.). Second, we determine, also de novo, whether the other acts were introduced as improper propensity evidence or for a permissible non-propensity purpose under Evid.R. 404(B)(2). *Hartman* at ¶ 22. Finally, we assess the evidence's probative value against its risk of unfair prejudice under Evid.R. 403(A), reviewing the juvenile court's determination on that matter for an abuse of discretion. *Id.* at ¶ 29-30; *McDaniel* at ¶ 17.

{¶19} Even when evidence is otherwise inadmissible, the defendant might not be able to take advantage of that error on appeal if they opened the door to its admission. " 'The term "opening the door" is based upon the doctrine of "invited error." ' " *McDaniel* at ¶ 11, quoting *In re Bailey*, 1st Dist. Hamilton No. C-990528, 2001 WL 477069, 1 (May 2, 2001). "This doctrine 'prohibits a party who induces error in the trial court from taking advantage of such an error on appeal.' " *Id.*, quoting *In re Bailey* at 1. But prying "open the door" does not justify opening the floodgates for prejudicial evidence. *Id.* at ¶ 13. " '[T]he doctrine is to prevent prejudice and is not to be subverted into a rule for injection of prejudice.' " (Emphasis deleted.) *State v. Bronner*, 9th Dist. Summit No. 20753, 2002-Ohio-4248, ¶ 73, quoting *United States v. Winston*, 447 F.2d 1236, 1240 (D.C.Cir.1971). Ultimately, "[t]he introduction of otherwise inadmissible evidence under the 'shield of this doctrine is permitted "only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence." ' " *Bronner* at ¶ 73, quoting *Winston* at 1240, quoting *California Ins. Co. v. Allen*, 235 F.2d 178, 180 (5th Cir.1956).

A.

{¶20} The first category of evidence challenged by K.M. under this assignment concerns Det. Stoll's testimony that K.M. watched pornographic videos along with the detective's statements about the potential role that watching pornography might have played in the alleged assaults. The court admitted this testimony after defense counsel cross-examined Det. Stoll about his interview with K.M., in which Det. Stoll asked K.M. whether he did the alleged sex acts because he was "in puberty and you're a little horny or is it because you watched videos?" Across 50-some pages of the trial transcript, the parties debated whether K.M. opened the door to Det. Stoll's subsequent testimony (and about playing related portions of his interview with K.M. on redirect) by quoting that question back to Det. Stoll and asking about it. To summarize that odyssey, the juvenile court determined K.M. opened the door to Det. Stoll's testimony and some portions of the recording that related to K.M.'s alleged history of viewing pornography because K.M. asked about "videos," but the court denied the state's midtrial Evid.R. 404(B) motion to introduce more evidence relating to it.

{¶21} We agree that K.M. opened the door to the testimony and to related portions of the recording. K.M.'s apparent goal in asking the question was to establish the content of Det. Stoll and K.M.'s conversation, including K.M.'s response to the detective's question—that he had a girlfriend and therefore did not watch much pornography. By raising that point on cross-examination, K.M. opened the door to Det. Stoll's testimony about the nature of the videos and why it was relevant to his investigation. The state then permissibly used the video recording of his interview with K.M. as demonstrative evidence to facilitate Det. Stoll's testimony. The final version of the recording admitted into evidence included Det. Stoll's questions about

11

pornography, including the question and answer about which K.M. cross-examined Det. Stoll, with other portions redacted.

{¶22} Ultimately, we conclude that everything the juvenile court allowed into evidence relating to K.M.'s viewing of pornography was fair game considering K.M.'s questions on that topic, and the evidence did not inject unfair prejudice against K.M. into the proceedings. Unlike the statements about K.M.'s alleged prior assault, which we address next, the evidence of his alleged history with pornography lacks an inflammatory sting in this context. And in addition to denying the state's midtrial Evid.R. 404(B) motion to introduce further evidence about K.M.'s history with pornography and the potential role it might have played in his behaviors with M.G. and L.M., the juvenile court closely parsed the video evidence and instructed the state to exclude improper portions related to it. Further, our review of the record indicates no additional evidence on this topic was admitted. Thus, we conclude the juvenile court properly limited the scope of pornography-related evidence to the narrow aspect opened by K.M., and overwhelming evidence in the record indicates that the court did not consider it as propensity evidence or for some other improper purpose.

{¶23} Therefore, we see no infirmity under Evid.R. 404(B), and the juvenile court properly limited the scope of the pornography evidence to what was invited by K.M.

B.

{¶24} The second episode at issue under K.M.'s first assignment of error concerns Ms. Helton's testimony, elicited by the state on redirect examination, that M.G. told her (and the police) about an allegation of past sexual abuse against him by

K.M., including anal and oral penetration. These statements were highly prejudicial, suggesting far more graphic allegations against K.M. than what was at issue in the case before the juvenile court. Nonetheless, the juvenile court concluded that K.M. opened the door to the content of these statements. Upon a close review of the trial record, we disagree.

{¶25} The purported door opening occurred when K.M. cross-examined Ms. Helton about whether she remembered M.G. saying that he had talked to the police before his interview with her. But K.M. did not ask about the content of those statements and referenced that part of M.G.'s interview for an alternative purpose: to establish that M.G. had spoken to the police about alleged abuse by K.M. prior to his interview. As K.M. established in his cross-examination of Ms. Helton, this prior disclosure could increase the risk of coached answers from the victim. Merely by establishing the timeline of M.G.'s disclosures, K.M. did not introduce a risk of unfair prejudice to the state that would necessitate it presenting evidence about the accusation of past abuse. In fact, the *state* first established the fact that M.G. spoke to the police through M.G.'s testimony. By asking Ms. Helton about that fact, K.M. merely took a known fact and emphasized its timing. To the extent the state sought to counteract any potential coaching, it could have redirected Ms. Helton about the circumstances of her interview without exploring the content of M.G.'s prior allegations. Ultimately, then, we conclude that K.M. did not open the door for Ms. Helton to testify about the content of M.G.'s statements to her regarding prior abuse by K.M. *See McDaniel*, 2021-Ohio-724, 168 N.E.3d 910, at ¶ 12, 13, 22.

{¶26} Given that K.M. did not open the door to the content of M.G.'s statements regarding prior abuse, the statements were inadmissible if Evid.R. 404(B)

did not permit their admission for a nonpropensity purpose. The state contends that introducing the content of the statements was necessary for "clarification of the proper context" after K.M. put M.G.'s "veracity, his reliability, and his motivation for disclosing the abuse" at issue. That argument runs into two problems: the state introduced evidence about M.G. speaking to the police first, and the content of M.G.'s statements about prior abuse was not necessary to rebut K.M.'s critique of his interview with Ms. Helton. Even if the statements did help clarify why M.G. mentioned speaking to police prior to his Mayerson interview, Ms. Helton easily could have limited her testimony to stating generally that they had been talking about an incident of prior abuse without disclosing specific, highly inflammatory details.

{¶27} Additionally, although the juvenile court overruled K.M.'s Evid.R. 404(B) objection after the statements were introduced, it seemed to acknowledge the high risk of prejudice by stating, "I understand and see now why the 404(B) evidence was agreed to be excluded," referring to the state's withdrawn notice of Evid.R. 404(B) evidence regarding M.G.'s accusation of a prior assault. Similarly, we see no permissible purpose for introducing the content of M.G.'s statements regarding prior abuse, and the risk of prejudice due to its highly inflammatory nature substantially outweighs its probative value regarding whether K.M. committed the act in question. Therefore, the statements should have been excluded under Evid.R. 404(B).

{¶28} Even though we conclude that the juvenile court improperly admitted evidence of M.G.'s accusations of prior sexual assault by K.M. without the defense opening the door to it, we must measure that error against the harmless error standard. *See McDaniel*, 2021-Ohio-724, 168 N.E.3d 910, at ¶ 23. Under Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial

14

rights shall be disregarded." Applying that rule to determine whether an error warrants reversal:

> (1) "There must be prejudice to the defendant as a result of the admission of the improper evidence at trial"; (2) "an appellate court must declare a belief that the error was not harmless beyond a reasonable doubt," i.e., that there was "no reasonable possibility that the testimony contributed to the accused's conviction"; and (3) "in determining whether * * * the error is harmless beyond a reasonable doubt, the court must excise the improper evidence from the record and then look to the remaining evidence."

*State v. Benson*, 1st Dist. Hamilton No. C-180128, 2019-Ohio-3255, ¶ 23, quoting *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153 ¶ 24, 27-29; *see State v. O'Connell*, 2020-Ohio-1369, 153 N.E.3d 771, ¶ 31 (1st Dist.).

{¶29} "[P]ropensity evidence is inherently prejudicial," *McDaniel* at ¶ 24, and it would be difficult to argue that the inflammatory statements did not at least color the factfinder's view of K.M., even in a bench trial. But after excising that testimony, the evidence still supports K.M.'s adjudication for gross sexual imposition regarding M.G.

{¶30} K.M.'s adjudication primarily rests upon M.G.'s testimony at trial and the recording of his interview with Ms. Helton. At trial, M.G. had trouble recalling anything about the December 2021 incident except K.M. smacking his butt and how it made him feel uncomfortable because that is a part of the body that others should not touch. M.G. also identified his private part and butt and said, "Yes" when asked, "Has

15

anyone ever touched you there?" Although he then identified K.M., he did not testify to a specific touching of his private part.

{¶31} But in M.G.'s recorded interview with Ms. Helton, M.G. recalled, in detail, K.M. touching him inappropriately in December 2021. As we concluded above, the juvenile court properly admitted this critical part of the video under a hearsay exception. It includes discussion of the relevant accusations but, notably, excludes any references to the allegation of a prior assault. Thus, the redacted video admitted into evidence bolsters the fact, apparent from the trial record, that the juvenile court consistently tried to keep out unfairly prejudicial evidence and to insulate itself from hearing it. Additionally, the record ultimately supports the juvenile court's credibility findings regarding M.G. and Ms. Helton, and none of its findings reference M.G.'s statements to Ms. Helton about K.M.'s earlier abuse.

{¶32} Furthermore, apart from its error in admitting evidence too directly describing M.G.'s accusation of prior abuse by K.M., the juvenile court took extensive measures to insulate itself from other evidence about the matter, including excluding other evidence about the prior incident. It cautioned the state about introducing details about the accusation before and after it was mentioned, noting the risk of introducing improper other acts evidence. Once it determined that the door was opened, it only allowed in Ms. Helton's testimony about the accusation and did not admit other testimony or evidence on the matter. For example, when Det. Stoll mentioned M.G.'s fear due to prior assaults by K.M., the court cut him off and instructed itself that the evidence was not taken for the truth of the matter asserted. Finally, it carefully parsed the video evidence and instructed the state to redact any mentions of alleged prior abuse, much of which the state had already preemptively

excluded. Thus, we see no indication that the juvenile court improperly considered evidence of M.G.'s accusations of prior abuse by K.M.

{¶33} We therefore have confidence, beyond a reasonable doubt, that even though the juvenile court erred by allowing the statements into evidence, it excluded consideration of M.G.'s allegation of prior assault by K.M. from its decision to adjudicate K.M. at trial. Accordingly, although the juvenile court erred in admitting the statements into evidence, its error was harmless, and we overrule K.M.'s first assignment of error regarding the improper admission of other acts evidence under Evid.R. 404(B).

IV.

{¶34} Finally, in his third assignment of error, K.M. challenges his adjudications as not supported by legally sufficient evidence and against the manifest weight of the evidence. As distinct grounds for appeal, we consider them separately, in turn.

{¶35} In a sufficiency challenge, "the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Dent*, 163 Ohio St.3d 390, 2020-Ohio-6670, 170 N.E.3d 816, ¶ 15. We assess sufficiency challenges de novo, but "the court is not to weigh the evidence." *State v. McDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12; *see Dent* at ¶ 15. And "in conducting a sufficiency review, a reviewing court must consider all the evidence admitted at trial, even improperly admitted evidence." *State v. Kareski*, 137 Ohio St.3d 92, 2013-Ohio-4008, 998 N.E.2d 410, ¶ 24, citing *Lockhart v. Nelson*, 488 U.S. 33, 34, 109 S.Ct. 285, 102 L.Ed.2d 265 (1998).

{¶36} K.M. argues the evidence was legally insufficient to establish that the alleged contact with M.G. and L.M. was for sexual arousal or gratification. The GSI statute, R.C. 2907.05(A), prohibits certain "sexual contact," and R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." The state correctly observes that the juvenile court can infer a purpose of sexual gratification based on the " 'type, nature and circumstances of the contact, along with the personality of the defendant.' " *State v. Hodgkin*, 2019-Ohio-1686, 135 N.E.3d 533, ¶ 11 (1st Dist.), quoting *State v. Cobb*, 81 Ohio App.3d 179, 185, 610 N.E.2d 1009 (9th Dist.1991).

{¶37} As described more fully above, M.G. testified generally that K.M. touched him on his butt and private part, that it caused him discomfort, and that he told others about it. In his Mayerson interview, he described the conduct in detail, including K.M. touching him in an inappropriate manner and that he then got away from K.M. Based on this context and testimony, the juvenile court had sufficient evidence to infer a sexual purpose for K.M.'s contact with M.G.

{¶38} Supporting the inference of sexual gratification regarding L.M., the state points to M.G.'s testimony about his concern after seeing K.M. and L.M. under the covers on K.M.'s bed in the basement because M.G. believed K.M. tends to carry out improper acts in that room. L.M. testified directly about K.M. touching her inappropriately over her clothes while they were on his bed and feeling weird about it, and her testimony aligned with her Mayerson interview. We see no evidence presented that this was nonsexual behavior, like accidental touching during "innocent

play," as K.M. suggests. The juvenile court had sufficient evidence that K.M.'s contact with L.M. had an intent of sexual gratification. Therefore, both of K.M.'s adjudications were supported by legally sufficient evidence.

**{¶39}** Separately, in reviewing adjudications against a manifest weight of the evidence argument, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Unlike in a sufficiency challenge, we "review the entire record, weigh the evidence and reasonable inferences, [and] consider the credibility of the witnesses." *State v. Barnthouse*, 1st Dist. Hamilton No. C-180286, 2019-Ohio-5209, ¶ 6. However, we will reverse the juvenile court's judgment and order a new trial only in " 'exceptional cases in which the evidence weighs heavily against the conviction.' " *State v. Sipple*, 2021-Ohio-1319, 170 N.E.3d 1273, ¶ 7 (1st Dist.), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶40}** K.M. argues M.G.'s testimony was contradictory and confusing. Although M.G. only recalled K.M. "smacking" him on the butt during his trial testimony and did not testify specifically about when K.M. touched his private part, his Mayerson interview includes much more detail on the incident, including K.M. touching him on the bottom of his private part. The court found his testimony and interview credible, and we see no reason to depart from that conclusion, despite M.G.'s inability to specifically recall certain specific details at trial. Ms. Helton testified about how a child's disclosures of abuse come at different times and in different ways, and the juvenile court seemingly followed that testimony. The court did not lose its way in adjudicating K.M. regarding M.G.

{¶41}  Finally, K.M. contests his adjudication regarding L.M. because she did not explain specific details about how he touched her, she contradicted herself, and her Mayerson interview was improperly leading.  But L.M. explained in the interview and at trial how K.M. touched her where she should not be touched, specifically her private part, when she was on top of his bed in his room.  She provided enough details for the inference that the contact was not accidental and had a sexual gratification purpose, and K.M. did not present evidence to the contrary.  Further, her Mayerson interview was not leading, and L.M. provided details about the incident without coaching or suggestions other than Ms. Cremeans mentioning that her mom told the Center that L.M. was touched inappropriately.  The court did not lose its way in adjudicating K.M. for his contact with L.M.

{¶42}  In sum, K.M.'s adjudications for gross sexual imposition regarding M.G. and L.M. were supported by legally sufficient evidence and were not against the manifest weight of the evidence.  We therefore overrule K.M.'s third and final assignment of error.

\*          \*          \*

{¶43}  Despite our conclusion that the juvenile court erred by admitting M.G.'s statements regarding a prior instance of abuse by K.M., the court otherwise aptly navigated a complicated evidentiary landscape and did not appear to consider the improper evidence.  Because we conclude that the court's only error was harmless and because K.M.'s delinquency adjudications were supported by legally sufficient evidence and were not against the manifest weight of the evidence, we overrule K.M.'s three assignments of error and affirm the judgments of the juvenile court adjudicating

him on two counts of what would be gross sexual imposition, in violation of R.C. 2907.05, had he been charged as an adult.

Judgments affirmed.

**BOCK, P.J.,** and **KINSLEY, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.